1  Eric J. Fromme, Esq. (State Bar No. 193517)
   efromme@tocounsel.com
2  THEODORA ORINGHER PC
   535 Anton Boulevard, Ninth Floor
3  Costa Mesa, California 92626-7109
   Telephone: (714) 549-6200
4  Facsimile: (714) 549-6201

5  Attorneys for RUBY'S FRANCHISE SYSTEMS,
   INC., Debtor and Debtor-in-Possession

6

7              **UNITED STATES BANKRUPTCY COURT**

8        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

9  In re                                  Case No. 8:18-bk-13324-CB

10 RUBY'S FRANCHISE SYSTEMS, INC., a       Chapter 11
   California corporation,[1]

11                                          **NOTICE OF MOTION AND MOTION
              Debtor and                    FOR ORDER (A) EXTENDING THE
12            Debtor-in-Possession          TIME PERIODS DURING WHICH THE
                                            DEBTOR HAS THE EXCLUSIVE RIGHT
13                                          TO FILE A PLAN AND TO SOLICIT
                                            ACCEPTANCES THEREOF PURSUANT
14                                          TO SECTION 1121(D) OF THE
                                            BANKRUPTCY CODE; AND (B)
15                                          GRANTING RELIEF FROM DEADLINE
                                            TO FILE A PLAN; MEMORANDUM OF
16                                          POINTS AND AUTHORITIES;
                                            DECLARATION OF DOUGLAS S.
17                                          CAVANAUGH IN SUPPORT THEREOF**

18                                          [No Hearing Required Unless Requested per
                                            L.B.R. 2014-1(b)]
19

20

21

22

23

24         **TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY**

   **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE 20 LARGEST**
25
   **UNSECURED CREDITORS, SECURED CREDITORS, AND OTHER PARTIES IN**
26
   **INTEREST:**
27  ─────────────────────

28         [1] The last four digits of the Debtor's federal tax identification number is 8101.

1    **PLEASE TAKE NOTICE** that RUBY'S FRANCHISE SYSTEMS, INC., a California

2   corporation ("**RFS**" or the "**Debtor**"), hereby moves this Court (the "**Motion**") pursuant to section

3   1121 of title 11 of the United States Code (the "**Bankruptcy Code**") for an order:[2]

4        (1)    Extending the exclusivity periods, pursuant to section 1121 of the Bankruptcy

5   Code, by which Debtor has to file a plan from January 4, 2019 to and including March 5, 2019;

6   and

7        (2)    Extending the solicitation exclusivity periods, pursuant to section 1121 of the

8   Bankruptcy Code, during which only Debtor may solicit acceptances to its plan, from March 5,

9   2019 to and including June 3, 2019.

10       Good cause exists for this limited extension of the exclusivity deadlines pursuant to section

11  1121(d) of the Bankruptcy Code as Debtor, after extensive negotiations, has reached agreements

12  in its chapter 11 case which will provide the structure of and funding for a joint plan of

13  reorganization to be filed by Debtor and related debtor, Ruby's Diner, Inc., a California

14  corporation ("**RDI**"), an entity affiliated with Debtor through common ownership and control

15  which is a debtor in a separate chapter 11 proceeding pending in front of this Court.[3]

16       Specifically, and as set forth in further detail herein, these agreements provide for the

17  provision of debtor-in-possession financing in the amount of Two Million Dollars ($2,000,000)

18  (the "**DIP Financing**") and additional plan funding by Steve Craig, as lender and plan sponsor, for

19  total consideration of at least Four Million Dollars ($4,000,000) (including the DIP Financing)

20  pursuant to a plan support agreement dated August 30, 2018, as amended (defined herein as the

21  "**Plan Support Agreement**").  In addition, Debtor has negotiated and recently reached agreement

22  with the Official Committee of Unsecured Creditors (the "**Committee**") regarding the terms of the

23  plan to be proposed in Debtor's case and its support for the DIP Financing and the Plan Support

24  Agreement.  In order to have a period of time to obtain Court approval of the agreements with Mr.

25

26       [2] The deadlines set forth in this Motion are based on the September 6, 2018 petition date of the
27  Debtor.

28       [3] The Debtor and RDI currently contemplate filing one joint plan in their chapter 11 cases.

THEODORA ORINGHER
COUNSELORS AT LAW

1  Craig and the Committee (approval of which will be sought by way the "**DIP Financing**

2  **Motion**"), and thereafter prepare and file a plan and disclosure statement in accordance with such

3  agreements, Debtor requires a limited extension of the exclusivity periods as requested by this

4  Motion.[4]

5          Under these circumstances, the factors traditionally considered by bankruptcy courts

6  overwhelmingly support extending Debtor's exclusivity period.  Moreover, an extension of

7  exclusivity will facilitate this chapter 11 case moving forward towards a fair and equitable

8  resolution, which is the ultimate purpose of exclusivity.  Accordingly, Debtor believes that the

9  requested extensions are reasonable and necessary and therefore should be granted by this Court.

10          **PLEASE TAKE FURTHER NOTICE** that, any objection to the Motion and request for

11  a hearing must be in the form prescribed by Local Bankruptcy Rule 9013-1(o)(1) and must be filed

12  with the Clerk of the Bankruptcy Court located at the Ronald Reagan Federal Building and U.S.

13  Courthouse, 411 West Fourth Street, Santa Ana, CA 92701 and served on counsel for Debtor, at

14  the address indicated in the upper left-hand corner of the first page of the Motion, and the Office

15  of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701, within

16  fourteen (14) days after the date of the service of the notice.  If a timely response and request for

17  hearing is filed and served, then Debtor will schedule and give not less than fourteen (14) days'

18  notice of a hearing to those responding and to the Office of the United States Trustee.

19          **PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 9013-1(o) of the Local

20  Bankruptcy Rules, failure to timely file and serve a response or objection may be deemed to

21  constitute consent to the relief requested by Debtor in this Motion.  If the objection period expires

22  without the filing of a response and request for hearing, then Debtor will submit to this Court an

23  order for entry without a hearing.

---

25          [4] While Debtor requests an extension of sixty (60) days, Debtor anticipates that it will be in a
position to file a plan and disclosure statement well within this time.  Indeed, Debtor's DIP budget
26  estimates that an effective date of the plan will be on or around the end of April 2019.  The timing,
however, will depend on the approval of the DIP Financing and assumption of and entry into the Plan
27  Support Agreement, as requested by the DIP Financing Motion, and the requested extension is without
prejudice to Debtor's right to request further extensions, as may be appropriate.
28

1    This Motion is based upon the attached Memorandum of Points and Authorities and

2  Declaration of Douglas S. Cavanaugh, the record in these chapter 11 cases, and such additional

3  arguments and evidence that may be properly presented to this Court, at, or prior to, any hearing or

4  ruling on this Motion, if such hearing is deemed necessary.

5    **WHEREFORE**, Debtor respectfully requests that the Court enter an order:

6    A.    Granting this Motion without prejudice to Debtor's ability to seek further

7  extensions of the exclusivity periods;

8    B.    Extending Debtor's exclusivity periods to file a plan from January 4, 2018 to and

9  including March 5, 2019;

10    C.    Extending Debtor's exclusivity periods for soliciting acceptances of their plan from

11  March 5, 2019 to and including June 3, 2019; and

12    D.    Granting such other and further relief as may be just and proper under the

13  circumstances.

14

15  DATED:  January 3, 2019              THEODORA ORINGHER PC

16

17                          By:      */s/ Eric J. Fromme*

18                                Eric J. Fromme, Esq.
                                 Attorneys for Debtor
19                                RUBY'S FRANCHISE SYSTEMS, INC.

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## STATEMENT OF FACTS

4

**A.    Jurisdiction and Venue**

5

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This

6

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C.

7

§§ 1408 and 1409.

8

**B.    Background**

9

On September 6, 2018, Debtor filed a chapter 11 case (the "**Case**").  No party has

10

requested the appointment of a trustee or examiner in the Debtor's case.  On September 19, 2018,

11

the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in

12

the jointly administered bankruptcy case filed by RDI (the "**Committee**").

13

**C.    Description of Debtor' Business**

14

Ruby's Franchise Systems, Inc. ("**RFS**") was incorporated on July 13, 1990.  Its principal

15

business address is 4100 MacArthur Blvd., Suite 310, Newport Beach, California 92660.  Ruby's

16

Diners, Inc. ("**RDI**"), an affiliate of the Debtor through common ownership and control, owns

17

varying percentages of and operates diners in Southern California through its subsidiaries,

18

including through its wholly-owned subsidiary, SoCal Diners.  RDI and its affiliates (referred to

19

from time to time herein as the "**Company**") own, operate and manage restaurants under the trade

20

names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group," "Ruby's® Dinette" and

21

"Ruby's® Shake Shop."  The Company has operated Ruby's® Diner restaurants since its

22

incorporation in 1985 and is known as a purveyor of very popular burgers, fries and shakes.

23

Debtor and RDI are both owned 60% by Douglas Cavanaugh and 40% by Ralph Kosmides, the

24

founders of the Company (the "**Company Founders**").  RDI is the owner of the Ruby's®

25

trademarks, system and intellectual property (the "**Marks and Intellectual Property**").  Debtor

26

currently serves as the franchisor to the Ruby's® franchisees/licensees, and licenses the Marks and

27

Intellectual Property from RDI as licensor.

28

THEODORA ORINGHER
COUNSELORS AT LAW

THEODORA ORINGHER
COUNSELORS AT LAW

As of the Petition Date, there were twenty-four (24) Ruby's® Diner franchises (or licensed units) located in Southern California, Arizona, Pennsylvania, New Jersey, Nevada and Texas that are owned and, with certain limited exceptions, operated by independent third parties.[5]  Mr. Craig, directly or indirectly, is the franchisee with respect to franchised restaurants located in California (Citadel, Corona del Mar, Laguna Beach, San Clemente) and Arizona (Anthem), and also operates a Ruby's food truck.

RFS currently serves as the franchisor to the Ruby's® franchisees/licensees (the "**Franchisees**") and licenses the Marks and Intellectual Property from RDI as licensor pursuant to the RFS/RDI License Agreement (as defined herein below).  Under RFS' agreements with the Franchisees (the "**Franchise Agreements**"), RFS (as franchisor) is entitled to franchise royalty fees from the Franchisees (the "**Franchise Royalties**"), which are generally the greater of a set dollar amount or four percent (4%) of "Gross Sales" as such term is defined in the Franchise Agreements.[6]  The Franchise Royalties historically averaged approximately Two Million Four Hundred Thousand Dollars ($2,400,000) per annum (assuming payment of Franchise Royalties by the Franchisees).  In addition, the majority of the Franchisees[7] are obligated under the Franchise Agreements to make payments to an advertising fund in connection with the marketing and advertising of the Ruby's® brand on a regional and a system/national level, each in the amount of one percent (1%) of Gross Sales (*i.e.,* a total marketing contribution of two percent (2%) of Gross Sales).

_____

[5] RDI provides operational support and related services to the franchise located in Yorba Linda, California (Ruby's Yorba Linda, Ltd.).  Ruby's Management, LLC ("**RMLLC**") (an entity owned by Mr. Cavanaugh, Mr. Kosmides and Douglas Salisbury), provides operational support and related services for a Ruby's® restaurant located in Morongo, California (Ruby's Morongo) and has sub-contracted with RDI for those services for an administrative fee.

[6] Two locations, Ruby's Anaheim and Ruby's Morongo, utilize the Marks and Intellectual Property, but do not pay royalties to RFS, nor does Ruby's Anaheim contribute to the Ad Fund (as defined herein).

[7] Certain Franchisees in specialty locations do not have Ad Fund Obligations as they serve a "captive" customer base, such as the Restaurants located at casinos and airports.  As noted above, Ruby's Anaheim does not have Ad Fund Obligations.

1       As licensor of the Marks and Intellectual Property to RFS, pursuant to an Amended and

2  Restated Trademark and Intellectual Property License Agreement, dated June 1, 1990 (the

3  "**RDI/RFS License Agreement**"), RDI is entitled to one percent (1%) of the Gross Sales

4  generated by the Franchisees as a license fee (*i.e.,* 25% of the Franchise Royalties paid to RFS)

5  which historically averaged approximately Six Hundred Thousand Dollars ($600,000) per annum

6  (assuming payment of Franchise Royalties by the Franchisees).

**D.**    **The Plan Support Agreement, DIP Financing and Agreement With the Committee**

       Pursuant to a plan support agreement dated August 30, 2018, between RDI, RFS, the

Founders and Mr. Craig, as amended (the "**Plan Support Agreement**"), RDI and RFS

contemplate that they will propose a joint chapter 11 plan of reorganization in their chapter 11

cases (which plan may, or may not, include the other Debtors, but is referred to herein as the

"**Plan**"), pursuant to which, among other things, the RDI/RFS License Agreement will be

terminated and the surviving merged entity will assume the role of franchisor of the Ruby's®

brand.  The Plan Support Agreement further provides for the provision of Two Million Dollars

($2,000,000) in DIP Financing from Mr. Craig (approval of which is requested by way of the DIP

Financing Motion), as well as the provision of Plan funding by Mr. Craig by way of conversion of

the DIP Loan, conversion of an existing note in the face amount of One Million Dollars

($1,000,000) owed by RFS to Mr. Craig, and the provision of new funds such that the total

consideration paid by Mr. Craig will be Four Million Dollars ($4,000,000).  In addition, the Plan

Support Agreement provides that the Founders will make a "new value" contribution on the

Effective Date of the Plan.[8]  As a result of the proposed implementation of the terms of the Plan

Support Agreement pursuant to the Plan, all of the assets of RDI and RFS will be owned by a

reorganized debtor which will be owned 60% by Mr. Craig, 24% by Mr. Cavanaugh and 16% by

---

[8] To the extent required by applicable law, the "new value" contribution by the Founders will be valued by way of an auction process in connection with the Plan process.

1  Mr. Kosmides (with the Founders' interests subject to dilution in the event that Mr. Craig funds

2  additional cash on the Effective Date).

3       The Plan Support Agreement, including agreement for the provision of the DIP Facility

4  (and a break-up fee), is an integrated agreement with terms that are conditioned upon approval of

5  the whole.  Accordingly, Debtor seeks approval of the assumption of and entry into the Plan

6  Support Agreement by way of the DIP Financing Motion.

7       Debtor has also reached an agreement the Committee for the treatment of unsecured

8  creditors under the Plan.  In accordance with this agreement, the relief requested by the DIP

9  Financing Motion, including approval of the DIP Financing and assumption of and entry in the

10  Plan Support Agreement, has the support of the Committee.

11  **E.**     **The Requested Extension of the Exclusivity Periods**

12       On January 4, 2019, the 120-day period provided for in section 1121(c)(2) of the

13  Bankruptcy Code, during which only Debtor may file a plan of reorganization, will expire in

14  Debtor's case.  On March 5, 2019, the 180-day period provided in section 1121(c)(3), during

15  which only Debtor's filed plan may be considered for acceptance or rejection, will expire in the

16  Debtor's case.  This is Debtor's first motion to extend the exclusivity periods.

17       Debtor seeks this first extension of its exclusivity period for filing a plan and obtaining

18  acceptances of its plan in order to allow sufficient time for Debtor to obtain Court approval of the

19  DIP Financing and the assumption of and entry into the Plan Support Agreement with Mr. Craig

20  and the Founders as requested by the DIP Financing Motion, to implement the same pursuant to a

21  Plan and, thereafter, to proceed through the disclosure statement and plan confirmation process

22  without the distraction and expense of a competing plan.  Therefore, Debtor requests that the

23  exclusivity period pursuant to section 1121(c)(2) of the Bankruptcy Code be extended for an

24  additional sixty (60) days through and including March 5, 2019, and the exclusivity period

25  pursuant to section 1121(c)(3) be extended for an additional ninety (90) days through and

26  including June 3, 2019.[9]

27  _____

28      [9] Debtor anticipates that it will be in a position to file a plan and disclosure statement well

## II.

## CAUSE EXISTS TO GRANT AN EXTENSION OF THE
## DEBTORS' EXCLUSIVITY PERIODS

**A.    The Bankruptcy Code Specifically Provides for an Extension of the    Exclusivity Periods**

To promote balanced and successful reorganizations under chapter 11 of the Bankruptcy Code, Congress provided debtors with the exclusive right, for a reasonable period of time, to propose a plan of reorganization and solicit votes thereon.  To that end, section 1121(b) of the Bankruptcy Code provides a debtor with the exclusive right to file a plan of reorganization for a period of 120 days from the entry of the order for relief under chapter 11.  See 11 U.S.C. § 1121(b); 7 COLLIER ON BANKRUPTCY ¶ 1121.03 Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  "If the debtor files a plan within this 120-day exclusivity period, then section 1121(c)(3) provides that exclusivity is extended for an additional 60 days to 180 days to maintain exclusivity during the acceptance/solicitation period required by sections 1126 and 1129(a)."  7 COLLIER ON BANKRUPTCY at ¶ 1121.04 (16th ed.).  During these two exclusivity periods that run concurrently, no other party in interest may file a competing plan.  *See id.*  After a debtor's "exclusivity periods" expire, any other party in interest may file a plan.  *See* 11 U.S.C. § 1121(c).

The flexibility of section 1121 of the Bankruptcy Code is intended to give the debtor an adequate opportunity to stabilize its business operations at the outset of its chapter 11 case, to resolve critical contingencies and to negotiate an effective plan of reorganization with its creditors. *See In re Newark Airport/Hotel L.P.*, 156 B.R. 444, 451 (Bankr. D. N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that chapter 11 provisions are designed to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D.

within the requested  sixty (60) day extension.  Indeed, Debtor's DIP budget estimates that an effective date of the plan will be on or around the end of April 2019.  The timing, however, will depend on the approval of the DIP Financing and assumption of and entry into the Plan Support Agreement, as requested by the DIP Financing Motion.  The extension requested by way of this Motion, therefore, is without prejudice to Debtor's right to request further extensions, as may be appropriate

Tenn. 1987) (noting that section 1121 of the Bankruptcy Code is designed to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

A bankruptcy court can increase the exclusivity periods for "cause." The party seeking an extension or termination in the statutory time period provided under 11 U.S.C. § 1121(d) bears the burden of proving that "the requisite cause exists." *See In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). Bankruptcy courts examine a number of factors in determining whether a debtor has had an adequate opportunity to develop, negotiate and propose a chapter 11 plan and, thus, whether there is "cause" for extension of the debtor's exclusive periods, including the following non-exclusive list of nine factors:

1. The size and complexity of the case;

2. The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

3. The existence of good faith progress toward reorganization;

4. The fact that the debtor is paying its bills as they become due;

5. Whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6. Whether the debtor has made progress in negotiations with its creditors;

7. The amount of time which has elapsed in the case;

8. Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9. Whether an unresolved contingency exists.

*In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (cited with approval in *In re Henry Mayo Newhall Memorial Hospital*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002)); *In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In the Matter of Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005).

These nine factors are simply a starting point, the debtor need not satisfy every single factor, and courts are free to consider other relevant factors based on the unique facts of the case. *See Adelphia Communications Corp.*, 352 B.R. at 583, 587. The transcendent consideration is

1    "whether adjustment of exclusivity will facilitate moving the case toward a fair and equitable

2    resolution." *See Henry Mayo*, 282 B.R. at 453.  The decision of whether to grant a request to

3    extend the exclusivity deadlines lies within the sound discretion of the bankruptcy court.  *See In re*

4    *Gibson & Cushman*, 101 B.R. 405, 409 (E.D.N.Y. 1989).

5    **B.**    **Good Cause Exists to Grant the Requested Extension of the Exclusivity Periods**

6         As illustrated below, an application of the foregoing standards to the facts present in this

7    chapter 11 case demonstrate sufficient "cause" to grant Debtor's requested extensions of the

8    exclusivity periods.  A review of relevant factors, which are discussed in detail below, weigh

9    heavily in favor of granting this Motion.

10         **1.**    **Size and Complexity of the Cases**

11         RFS' case is related to RDI's case, which consists of seven (7) jointly administered, but

12    not consolidated, estates.  The jointly administered cases collectively have over $20 million in

13    secured and unsecured debt, and have thousands of creditors.  In addition, while the joint

14    administration of the cases has eliminated a large degree of administrative complications, and RFS

15    only had one set of schedules of assets and liabilities and statements of financial affairs, the same

16    employees that worked on the other sets of schedules were needed to work on RFS' schedules and

17    statement of financial  affairs.  Furthermore, RFS has spent significant time working with counsel

18    for RDI in formulating a plan and negotiating with the Committee.   As such, the size and

19    complexity of the cases weighs in favor of granting an extension of exclusivity.

20         **2.**    **The Necessity of Sufficient Time to Permit Debtor to Negotiate a Plan**

21              **and Prepare Adequate Information and Good Faith Progress in the**

22              **Administration of the Case**

23         Debtor has been operating under the protection of chapter 11 for under four (4) months.

24    During this short period of time, Debtor has made significant progress in administering the case.

25    Such efforts include, but not limited to the following:  (1) the filing and obtaining of orders on

26    various "first day" motions, including a motion authorizing Debtor' use of cash collateral, a

27    motion authorizing Debtor to honor certain pre-petition obligations/customer programs in the

28    ordinary course, a motion prohibiting the termination of utility services, a motion authorizing the

1  continued use of Debtor' cash management system, and a motion authorizing Debtor to honor

2  certain employee programs; (2) preparing and filing schedules of assets and liabilities; and (3)

3  filing and obtaining orders authorizing the employment of professionals.   Debtor is in compliance

4  with its obligations to the Office of the United States Trustee.

5  Moreover, as detailed herein, Debtor has made significant progress in its chapter 11 case in

6  reaching agreements that will provide for case and plan funding – by way of the DIP Financing

7  and the Plan Support Agreement – and for the treatment of unsecured creditor claims under the

8  Plan pursuant to Debtor's agreement with the Committee.  These agreements will be reflected in

9  the Plan to be prepared and filed with the Court in the near term following Court approval of the

10  relief requested pursuant to the DIP Financing Motion.

11  ### 3.    Debtor is Paying Its Bills as They Become Due

12  Here, Debtor is currently operating under a Court approved budget and is current on all of

13  its undisputed post-petition bills.  As a result, Debtor is managing its business effectively and is

14  preserving the value of its assets for the benefit of creditors.  Debtor is also current on all post-

15  petition United States Trustee fees.

16  ### 4.    The Cases Have Been Pending for a Mere Four Months

17  This is Debtor's first request for an extension of the exclusivity periods and it comes less

18  than four (4) months after the commencement of the cases.

19  ### 5.    Debtor Has Attempted to Negotiate With Creditors

20  To date, Debtor has worked together with its creditors in a cooperative manner.  Debtor

21  has spent significant time working to resolve disputes with its pre-petition secured and unsecured

22  creditors and, for any other creditor who has requested it, Debtor has provided and shared

23  information with those creditors.   Debtor's agreement with Opus Bank and other secured creditors

24  relative to the use of cash collateral, and its agreement with the Committee relative to the

25  treatment of unsecured claims under the plan, supports the requested extension of the exclusivity

26  periods.

27  ///

28  ///

1          **6.**     <u>Debtor is Not Using Exclusivity in Order to Pressure Creditors to</u>

2                  <u>Submit to Debtor's Reorganization Demands</u>

3        Debtor's request for an extension of exclusivity is made in good faith, and not for the

4 improper purpose of delay, to gain advantage in negotiations with any claimants, or to pressure

5 creditors to accede to the terms of its plan.

6        Debtor's intention in requesting an extension of exclusivity is simply to procure the time it

7 needs to obtain court approval of the DIP Financing Motion, and the relief requested therein, and

8 to prepare a plan in accordance with the Plan Support Agreement and the agreement with the

9 Committee and will ensure the fair and efficient treatment of all valid creditors' claims in the

10 cases.  If exclusivity is terminated, Debtor may be forced to divert time and resources away from

11 this process to defend against competing plans.  A competing plan battle will complicate the cases

12 and would result in substantial extra costs that might otherwise be avoided.  Debtor has been and

13 will continue to be extremely diligent in moving the case forward toward plan confirmation.

14          **7.**     <u>The Foregoing Factors Support an Extension of the Exclusivity Periods</u>

15        Based on the foregoing, there is no evidence that Debtor has sought to delay the formation

16 and confirmation of a plan or is using exclusivity for improper purposes.  The motion is timely

17 and may be approved without a formal hearing

18        Section 1121(d) of the Bankruptcy Code provides that, on request of a party in interest

19 <u>made within the respective periods</u> specified in 11 U.S.C. § 1121(b) and (c), after notice and a

20 hearing, "the court may for cause reduce or increase the 120-day period or the 180-day period

21 referred to in this section."  <u>See</u> 11 U.S.C. § 1121(d) (emphasis added).  "[T]he statutory

22 requirement is that a <u>request</u> for an extension be made within the prevailing exclusivity period, not

23 that the request be <u>granted</u> in such a period."  *See In re Nicolet, Inc.*, 80 B.R. 733, 741 (Bankr.

24 E.D. Pa. 1988) (emphasis in original).  As the Motion has been filed prior to the expiration of the

25 current exclusivity periods, the request is timely.

26        Even though section 1121(d) provides that the extension may be provided after notice and

27 a hearing, Local Bankruptcy Rule 9013-1(o)(1), provides that certain motions and matters can be

28 determined solely upon notice and opportunity to request a hearing.  *See* Local Bankruptcy Rule

1   9013-1(o)(1).  Debtor seeks this Court's approval of the Motion in accordance with Local

2   Bankruptcy Rule 9013-1(o)(1).  In addition, sections 102(1)(A) and (B) of the Bankruptcy Code

3   provide that "after notice and a hearing" means after such notice as is appropriate in the particular

4   circumstances, and such opportunity for a hearing as is appropriate in the particular

5   circumstances. . . ."

## II.

## CONCLUSION

**WHEREFORE**, Debtor respectfully requests that this Court enter an order:

(1)     Granting this Motion without prejudice to Debtor's ability to request further

extensions of the exclusivity periods;

(2)     Extending Debtor's exclusivity periods to file a plan from January 4, 2019, to and

including March 5, 2019;

(3)     Extending Debtor's exclusivity periods for soliciting acceptances of their plan from

March 5, 2019, to and including June 3; and

(4)     Granting such other further relief as this Court deems just and proper.

DATED:  January 3, 2019                    THEODORA ORINGHER PC


                                           By:    _/s/ Eric J. Fromme_____
                                                  Eric J. Fromme, Esq.
                                                  Attorneys for Debtor
                                                  RUBY'S FRANCHISE SYSTEMS, INC.

## DECLARATION OF DOUGLAS S. CAVANAUGH

1.    I am a founder and the Chief Executive Officer ("**CEO**") of Ruby's Franchise Systems, Inc., a California corporation ("**RFS**"), the debtor in the above-captioned chapter 11 case and debtor-in-possession.  I have served in the capacity of CEO of RFS since its incorporation in 1990.  I am also a 60% shareholder of RFS.  Ralph Kosmides owns the other 40% of RFS.   Mr. Kosmides and I also own, in the same percentages, Ruby's Diners, Inc., a California corporation ("**RDI**"), an entity affiliated with the Debtors through common ownership and control which is a debtor in a separate chapter 11 proceeding pending in front of this Court.  Together, Mr. Kosmides and I are referred to herein as the "***Founders***").

2.    I submit this declaration (the "**Declaration**") in support of Debtor's *Motion for Order (A) Extending the Time Periods During Which Debtor Have the Exclusive Right to File a Plan and to Solicit Acceptances Thereof Pursuant to Section 1121(d) of the Bankruptcy Code; and (B) Granting Relief from Deadline to Fila a Plan* (the "**Motion**")[10]

3.    On September 6, 2018, RFS filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On September 5, 2018, RDI commenced a separate chapter 11 proceeding.

4.    No party has requested the appointment of a trustee or examiner in the Debtor's case.  On September 19, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the RDI case (the "**Committee**").

5.    RFS was incorporated on July 13, 1990.  Its principal business address is 4100 MacArthur Blvd., Suite 310, Newport Beach, California 92660.  Ruby's Diners, Inc. ("**RDI**"), an affiliate of the Debtor through common ownership and control, owns varying percentages of and operates diners in Southern California through its subsidiaries, including through its wholly-owned subsidiary, SoCal Diners.  RDI and its affiliates (referred to from time to time herein as the "**Company**") own, operate and manage restaurants under the trade names "Ruby's®," "Ruby's® Diner," "The Ruby Restaurant Group," "Ruby's® Dinette" and "Ruby's® Shake Shop."  The

---

[10] Capitalized terms not defined herein have the meanings ascribed to them in the Motion, as applicable.

1    Company has operated Ruby's® Diner restaurants since its incorporation in 1985 and is known as

2    a purveyor of very popular burgers, fries and shakes.  Debtor and RDI are both owned 60% by

3    Douglas Cavanaugh and 40% by Ralph Kosmides, the founders of the Company (the "**Company**

4    **Founders**").  RDI is the owner of the Ruby's® trademarks, system and intellectual property (the

5    "**Marks and Intellectual Property**").  Debtor currently serves as the franchisor to the Ruby's®

6    franchisees/licensees, and licenses the Marks and Intellectual Property from RDI as licensor.

7            6.       RDI is the 100% owner and sole and managing member of SoCal Diners.  SoCal

8    Diners is the 100% owner and sole and managing member of Quality.  SoCal Diners is the general

9    partner and 50% owner, and Quality is the limited partner and 50% owner, of the following

10    California limited partnerships: (1) Ruby's Huntington Beach, which owns and operates a Ruby's®

11    restaurant on the pier in Huntington Beach, California and is one of the SoCal Debtors; (2) Ruby's

12    Oceanside, which owns and operates a Ruby's® restaurant in Oceanside, California and is one of

13    the SoCal Debtors; (3) Ruby's Palm Springs, which owns and operates a Ruby's® restaurant in

14    Palm Springs, California and is one of the SoCal Debtors; (4) Ruby's Laguna Hills, which owns

15    and operates a Ruby's® restaurant in the Laguna Hill Mall in Laguna Hills, California and is one

16    of the SoCal Debtors; [11] and (5) Ruby's Mission Valley, Ltd., which until a few months prior to

17    the Petition Date, owned and operated a Ruby's® restaurant in the Westfield Mission Valley Mall

18    in San Diego, California.[12]

19            7.       As of the Petition Date, there also were twenty-four (24) Ruby's® Diner franchises

20    (or licensed units) located in Southern California, Arizona, Pennsylvania, New Jersey, Nevada and

21    Texas that are owned and, with certain limited exceptions, operated by independent third parties.[13]

22

23            [11] RDI anticipates that, due to significant, continuing construction projects underway at the
24    Laguna Hills Mall, the Laguna Hills restaurant will close following the Petition Date.

25            [12] The Mission Valley restaurant was closed prior to the Petition Date, in April 2018.  Ruby's
26    Mission Valley, Ltd., while owned by SoCal Diners and Quality, is not operating and is thus not a
     debtor entity.

27            [13] RDI provides operational support and related services to the franchise located in Yorba
28    Linda, California (Ruby's Yorba Linda, Ltd.).  Ruby's Management, LLC ("RMLLC") (an entity

1   Mr. Craig, directly or indirectly, is the franchisee with respect to franchised restaurants located in

2   California (Citadel, Corona del Mar, Laguna Beach, San Clemente) and Arizona (Anthem), and

3   also operates a Ruby's food truck.

4         8.       RFS currently serves as the franchisor to the Ruby's® franchisees/licensees (the

5   "Franchisees") and licenses the Marks and Intellectual Property from RDI as licensor pursuant to

6   the RFS/RDI License Agreement (as defined herein below).  Under RFS' agreements with the

7   Franchisees (the "**Franchise Agreements**"), RFS (as franchisor) is entitled to franchise royalty

8   fees from the Franchisees (the "**Franchise Royalties**"), which are generally the greater of a set

9   dollar amount or four percent (4%) of "Gross Sales" as such term is defined in the Franchise

10  Agreements.[14]  The Franchise Royalties historically averaged approximately Two Million Four

11  Hundred Thousand Dollars ($2,400,000) per annum (assuming payment of Franchise Royalties by

12  the Franchisees).  In addition, the majority of the Franchisees[15] are obligated under the Franchise

13  Agreements to make payments to an advertising fund in connection with the marketing and

14  advertising of the Ruby's® brand on a regional and a system/national level, each in the amount of

15  one percent (1%) of Gross Sales (*i.e.,* a total marketing contribution of two percent (2%) of Gross

16  Sales).

17        9.       As licensor of the Marks and Intellectual Property to RFS, pursuant to an Amended

18  and Restated Trademark and Intellectual Property License Agreement, dated June 1, 1990 (the

19  "**RDI/RFS License Agreement**"), RDI is entitled to one percent (1%) of the Gross Sales

20  generated by the Franchisees as a license fee (*i.e.,* 25% of the Franchise Royalties paid to RFS)

21

22  owned by Mr. Cavanaugh, Mr. Kosmides and Douglas Salisbury), provides operational support and
    related services for a Ruby's® restaurant located in Morongo, California (Ruby's Morongo) and has
23  sub-contracted with RDI for those services for an administrative fee.

24      [14] Two locations, Ruby's Anaheim and Ruby's Morongo, utilize the Marks and Intellectual
25  Property, but do not pay royalties to RFS, nor does Ruby's Anaheim contribute to the Ad Fund (as
    defined herein).
26

27      [15] Certain Franchisees in specialty locations do not have Ad Fund Obligations as they serve a
    "captive" customer base, such as the Restaurants located at casinos and airports.  As noted above,
28  Ruby's Anaheim does not have Ad Fund Obligations.

1  which historically averaged approximately Six Hundred Thousand Dollars ($600,000) per annum

2  (assuming payment of Franchise Royalties by the Franchisees).

3        10.    Pursuant to a plan support agreement dated August 30, 2018, between RDI, RFS,

4  the Founders and Steve Craig, as amended (the "**Plan Support Agreement**"), RDI and RFS

5  contemplate that they will propose a joint chapter 11 plan of reorganization in their chapter 11

6  cases (which plan may, or may not, include the other Debtors, but is referred to herein as the

7  "**Plan**"), pursuant to which, among other things, the RDI/RFS License Agreement will be

8  terminated and the surviving merged entity will assume the role of franchisor of the Ruby's®

9  brand.  The Plan Support Agreement further provides for the provision of Two Million Dollars

10  ($2,000,000) in DIP Financing from Mr. Craig (approval of which is requested by way of the DIP

11  Financing Motion), as well as the provision of Plan funding by Mr. Craig by way of conversion of

12  the DIP Loan, conversion of an existing note in the face amount of One Million Dollars

13  ($1,000,000) owed by RFS to Mr. Craig, and the provision of new funds such that the total

14  consideration paid by Mr. Craig will be Four Million Dollars ($4,000,000).  In addition, the Plan

15  Support Agreement provides that the Founders will make a "new value" contribution on the

16  Effective Date of the Plan.[16]  As a result of the proposed implementation of the terms of the Plan

17  Support Agreement pursuant to the Plan, all of the assets of RDI and RFS will be owned by a

18  reorganized debtor which will be owned 60% by Mr. Craig, 24% by me and 16% by Mr.

19  Kosmides (with the Founders' interests subject to dilution in the event that Mr. Craig funds

20  additional cash on the Effective Date).

21        11.    The Plan Support Agreement, including agreement for the provision of the DIP

22  Facility (and a break-up fee), is an integrated agreement with terms that are conditioned upon

23  approval of the whole.  Accordingly, Debtor seek approval of the assumption of and entry into the

24  Plan Support Agreement by way of the DIP Financing Motion.

25

26

_____

27      [16] To the extent required by applicable law, the "new value" contribution by the Founders will

28  be valued by way of an auction process in connection with the Plan process.

THEODORA ORINGHER
COUNSELORS AT LAW

12.   Debtor has also reached an agreement the Committee for the treatment of unsecured creditors under the Plan.  In accordance with this agreement, the relief requested by the DIP Financing Motion, including approval of the DIP Financing and assumption of and entry in the Plan Support Agreement, has the support of the Committee.

13.   This is Debtor's first motion to extend the exclusivity periods.  Debtor seek a sixty (60) day first extension of their exclusivity periods for filing a plan and obtaining acceptances of their plan in order to allow sufficient time for Debtor to obtain Court approval of the DIP Financing and the assumption of and entry into the Plan Support Agreement with Mr. Craig and the Founders as requested by the DIP Financing Motion, to implement the same pursuant to a Plan and, thereafter, to proceed through the disclosure statement and plan confirmation process without the distraction and expense of a competing plan.

14.   I anticipate that Debtor will be in a position to file a plan and disclosure statement well within the requested sixty (60) day extension.  Indeed, Debtor's DIP budget estimates that an effective date of the plan will be on or around the end of April 2019.  The timing, however, will depend on the approval of the DIP Financing and assumption of and entry into the Plan Support Agreement, as requested by the DIP Financing Motion.  The requested extension, therefore, is without prejudice to Debtor's right to request further extensions, as may be appropriate.

15.   The estates of the jointly administered cases collectively have over $20 million in secured and unsecured debt, and have thousands of creditors.

16.   Debtor is in compliance with its duties under sections 521, 1106 and 1107 of the Bankruptcy Code, and also in compliance with the UST requirements.

17.   The UST quarterly fees for the quarter ending December 31, 2018 are due on January 31, 2019, and will be paid by Debtor by the payment deadline.

///

///

///

///

///

18.    I believe that the 60-day extension of the exclusivity periods sought by the Motion is in the best interests of Debtor's estate, stakeholders, and other parties in interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of January at Newport Beach, California.

_____
Douglas S. Cavanaugh

1150489.2/81621.08002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 535 Anton Blvd., 9th Floor, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*):
**NOTICE OF MOTION AND MOTION FOR ORDER (A) EXTENDING THE TIME PERIODS DURING WHICH THE DEBTOR HAS THE EXCLUSIVE RIGHT TO FILE A PLAN AND TO SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121(D) OF THE BANKRUPTCY CODE; AND (B) GRANTING RELIEF FROM DEADLINE TO FILE A PLAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DOUGLAS S. CAVANAUGH IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/03/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 01/03/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒        Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐        Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/03/2019 | Loretta Chapman | /s/Loretta Chapman |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

## SERVED BY COURT VIA NOTICE OF ELECTRONIC FILING

Alan J Friedman on behalf of Interested Party Alan Friedman
afriedman@shbllp.com; lgauthier@shbllp.com

Michael J Hauser on behalf of U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

David S Kupetz on behalf of Interested Party
dkupetz@sulmeyerlaw.com; dperez@sulmeyerlaw.com
dperez@ecf.inforuptcy.com; dkupetz@ecf.inforuptcy.com

Jessica G McKinlay on behalf of Creditor Opus Bank
mckinlay.jessica@dorsey.com

Matthew S Walker on behalf of Interested Party Pillsbury Winthrop Shaw Pittman LLP
matthew.walker@pillsburylaw.com; candy.kleiner@pillsburylaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

William Lobel on behalf of Interested Party William Lobel
wlobel@pszjlaw.com; nlockwood@pszjlaw.com; jokeefe@pszjlaw.com;
banavim@pszjlaw.com

Richard H Golubow on behalf of Interested Party Richard H Golubow
rgolubow@wcghlaw.com,
pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com

1

<u>SERVED BY UNITED STATES MAIL</u>

2

Kenneth Costello
Bryan Cave LLP
PO Box 503089
St. Louis, MO  63150-3089

3

4

5

Hugh M. Saddington
AFP Saddington LLP
18201 Von Karman Ave., Suite 4500
Irvine, CA  92612-1014

6

7

8

Curt C. Barwick
McConnell, Dunning & Barwick
9960 Research Drive, Suite 100
Irvine, CA  92618-4322

9

10

11

Robert J. Galle
19411 Foxdale Circle
Huntington Beach, CA  92648

12

13

Ryan Palmer
Gray Plant Mooty
80 South 8th Street
500 IDS Center
Minneapolis, MN  55402

14

15

16

17

Virginia Croudace
Croudace & Dietrich LLP
2151 Michelson Drive, Ste. 162
Irvine, CA 92612

18

19

20

Kathryn Weber
Jeffrey M. Verdon Law Group
1201 Dove Street, Suite 400
Newport Beach, CA  92660

21

22

23

John W. Spotts
Buckingham Consulting USA
420 West Melrose Street #21BC
Chicago, IL  60657

24

25

26

27

28

1

2  Tracie Forse
   Jackson Tidus A Law Corp.
3  2030 Main Street, Suite 1200
   Irvine, CA  92614

4  Traci T. Tran
5  White Nelson Diehl Evans LLP
   2875 Michelle Drive, Suite 300
6  Irvine, CA  92606

7  Heidi Winkelmann
8  Meissner Bolte
   PO Box 860624
9  Munich 80538, Germany

10 Rossell Cibrian-George
11 Outfront Media, Inc.
   PO Box 33074
12 Neward, NJ  07188-0074

13 Blake Garcia
14 Shared Insight Inc.
   1501 N. Sepulveda Blvd., Suites E and F
15 Manhattan Beach, CA  90266

16 Steven L. Craig
17 1 Oceancrest
   Newport Coast, CA 92657
18

19 Hon. Catherine E. Bauer
20 US Bankruptcy Court
   Ronald Reagan Federal Building
21 5th Floor Bin,
   411 West Fourth Street
22 Santa Ana, CA  92701

23

24

25

26

27

28